**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ANTHONY DOZIER, ET AL.                CIVIL ACTION NO. 24-0296

VERSUS                                JUDGE S. MAURICE HICKS, JR.

VOODOO ENERGY SERVICES                MAGISTRATE JUDGE HORNSBY
LLC

**MEMORANDUM RULING**

Before the Court are two Motions to Dismiss both filed by Defendant Voodoo Energy Services, LLC ("Voodoo"). The first Motion was filed on August 27, 2024 in response to Plaintiffs Anthony Dozier ("Dozier") and Cortney Smith's ("Smith") (collectively, "Plaintiffs") Original Complaint. See Record Document 12. Plaintiffs opposed. See Record Document 15. Voodoo replied. See Record Document 16. The second Motion was filed on November 27, 2024 in response to Plaintiffs' Amended Complaint. See Record Document 25. Plaintiffs did not oppose. For the reasons stated below, Voodoo's first Motion to Dismiss (Record Document 12) is **DENIED AS MOOT**. Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED** because Plaintiffs have failed to properly plead exhaustion in their Amended Complaint. However, for certain claims, the Court **GRANTS LEAVE** for Plaintiffs to file a second amended complaint to properly plead exhaustion. These claims are specified below.

**BACKGROUND**

Dozier, a black male, was hired by Voodoo as an operator supervisor on or about July 27, 2022. See Record Document 22 at ¶ 6. He worked under the direction of William Moon ("Moon"), the district manager who was hired shortly after Dozier. See id. at 6, 8.

Dozier had over 18 years of experience, which Plaintiffs claim qualifies him for his position. See id. Smith was hired by Voodoo, specifically selected by Dozier to be his helper and a pump-down, de-fracking operator on or about August 1, 2022. See id. at ¶ 7. Smith worked under the direction of Dozier and Moon. See id.

After Moon's arrival at Voodoo, the operators were split into two work groups, Team A and Team B. See id. at ¶ 9. Plaintiffs claim Team A was comprised of all white workers that Moon brought over from a previous company. See id. at ¶ 10. Plaintiffs allege that one of these workers on Team A, Dillon Franklin ("Franklin"), had a KKK symbol visibly tattooed on his arm. See id. Plaintiffs claim Team B was comprised of all the other workers hired at Voodoo, who were all black. See id. at ¶ 11. Dozier and Smith were on Team B. See id. Moon managed Team A, and Dozier managed Team B. See id. Plaintiffs state that one of their white counterparts referred to Team A as the Aryans and Team B as the Black Panthers. See id. at ¶ 12. They allege Moon favored Team A and induced a divided work environment amongst the operators on Teams A and B. See id. at ¶ 13.

Plaintiffs allege Team A was given preferential treatment in what job assignments they received and the accommodations provided to them in connection with their respective jobs. See id. at ¶ 14. For example, Plaintiffs point to an instance in September 2022 where Team B was required to complete a job because Team A refused. See id. at ¶¶ 15–21. On another job, Plaintiffs state Team B was required to commute, while Team A stayed in a hotel. See id. at ¶¶ 23–24. Dozier contacted Coby Simpson ("Simpson"), the chief of operations, to report the fact that Team A was staying at the hotel days after their job had ended while Team B was required to commute. See id. at ¶ 25. Following

this conversation, Team A was transferred to apartments in San Antonio, Texas, and Team B stayed at the hotel. See id. at ¶ 27.

Plaintiffs allege that, unlike Team A, when Team B finished a shift or was relieved from work, they were required to sleep in their trucks or commute long distances. See id. at ¶ 29–30. Dozier claims he persistently communicated with Moon about Team B's lack of accommodations and Team A's preferential treatment. See id. at ¶ 31. Plaintiffs claim that Moon would often disregard Dozier's requests for equitable accommodations for Team B and his reports of issues related to Plaintiffs' ability to properly complete their jobs. See id. at ¶ 40. Plaintiffs also point to several instances in August 2022, September 2022, and November 2022 where Moon ignored Dozier's text messages. See id. at ¶ 41–51.

On or about October 19, 2022, Meagan Davis ("Davis") from Voodoo human resources texted Dozier asking him for a copy of his driver's license and medical card. See id. at ¶ 53. Dozier informed her that he did not have an active medical card but would get one immediately on his next day off. See id. at ¶ 53–54. On or about November 2, 2022, Dozier reported to Simpson that Team B was being treated differently than Team A. See id. at ¶ 55–56. On November 7, 2022, Smith requested time off from November 11, 2022 to November 22, 2022, which Moon approved. See id. at ¶ 58.

On November 11, 2022, Davis called Dozier saying she had emailed him a form and some important disclosures for him to sign. See id. at ¶ 59. On November 14, 2022, Moon sent Dozier a text asking him to come sign paperwork from the corporate office the next morning. See id. at ¶ 60. On November 15, 2022, Dozier was given termination papers, which alleged he was being terminated due to his poor work performance and

not having a medical card. See id. at ¶ 61. Simpson told Dozier he would call Moon to investigate the matter but never followed up. See id. at ¶ 64.

On November 15, 2022, Smith contacted Moon to inquire about his job status. See id. at ¶ 65. From November 15, 2022 to November 22, 2022, Smith claims he sent follow up texts and calls to Moon with no reply. See id. at ¶ 68. On or about November 20, 2022, Moon phoned Smith saying he had termination papers and asked the status of Smith's driver's license. See id. at ¶ 69. On November 22, 2022, Smith received a text from Moon stating that his termination was final, there was nothing more to discuss, and he should receive an email with the termination letter. See id. at ¶ 71. Smith claims he never received the email. See id.

In their Amended Complaint, Plaintiffs assert four claims: (1) race discrimination under Title VII; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (3) retaliation under Title VII; and (4) hostile work environment under Title VII. See id. at ¶¶ 72–103. Under count one, Plaintiffs allege Voodoo subjected them to racial discrimination in their employment at the hands of Moon. See id. at ¶ 73. Under count two, they claim Voodoo engaged in discrimination against Plaintiffs based on their age when they were employees of Voodoo. See id. at ¶ 81. Under count three, Plaintiffs provide they were retaliated against as employees of Voodoo because of their age and race. See id. at ¶ 89. Finally, under count four, Plaintiffs believe Voodoo subjected them to racial harassment which created a hostile work environment. See id. at ¶ 98.

4

**LAW AND ANALYSIS**

**I. Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion. See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

**II. Prima Facie Case.**

(a) Title VII Race Discrimination.

"Title VII forbids employers from discriminating against an employee 'with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin[.]'" Shahrashoob v. Tex. A&M Univ., 125 F. 4th 641, 648 (5th Cir. 2025) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff can prove a discrimination claim under Title VII either by direct or circumstantial evidence. See Ayorinde v. Team Indus. Servs. Inc., 121 F. 4th 500, 507 (5th Cir. 2024). If a plaintiff only offers circumstance evidence, the Fifth Circuit analyzes the claim under the McDonnell

Douglas burden shifting framework. See id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)). Under the framework, a plaintiff bears the initial burden. Shahrashoob, 125 F. 4th at 649. A plaintiff must prove he "(1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside [his] protected group." Id.

The framework "is not a rigid pleading requirement, and to survive a motion to dismiss, [a plaintiff] need not plead a prima facie case of discrimination." Anderson v. McDonough, No. 21-4320, 2023 WL 5918090, at *2 (W.D. La. Sept. 11, 2023) (citing Puente v. Ridge, 324 F. Appx. 423, 427 (5th Cir. 2009)). Even so, a plaintiff "is not excused from his obligation to 'allege facts sufficient to state all the elements of his claims.'" Id. Thus, a court is permitted to consider the McDonnell Douglas framework at the pleading stage. See id.

### (b) ADEA Age Discrimination.

"'The ADEA…prohibit[s] an employer from discharging an employee on account that employee's age.'" Dabbasi v. Motiva Enters., L.L.C., 107 F. 4th 500, 505 (5th Cir. 2024) (quoting Goudeau v. Nat'l Oilwell Varco, L.P., 793 F. 3d 470, 474 (5th Cir. 2015)). See 29 U.S.C. § 623(a)(1). A plaintiff may base their age discrimination claim or either circumstantial or direct evidence, or a combination of both. See id. "If a plaintiff relies on circumstantial evidence of age discrimination, the [Fifth Circuit] applies the McDonnell Douglas framework to the inquiry." Id. The prima facie case requires a plaintiff to establish the following: "'(1) he was discharged; (2) he was qualified for the position; (3) he was

within the protected class at the time of discharge; (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" Id. (quoting Jackson v. Cal-W. Packaging Corp., 602 F. 3d 374, 378 (5th Cir. 2010) (citation omitted)).

     (c) Tile VII Retaliation.

To establish a successful retaliation claim, a plaintiff must prove the following: "(1) participation in an activity protected by Title VII, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." Anderson, 2023 WL 5918090, at *3 (citing McCoy v. City of Shreveport, 492 F. 3d 551, 556 (5th Cir. 2007)). Under Title VII, a protected activity "is defined as 'opposition to any practice rendered unlawfully by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" Newell v. Acadiana Planning Comm'n Inc., 637 F. Supp. 3d 419, 432–33 (5th Cir. 2022). "Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause 'requires opposition of a practice made unlawfully by Title VII.'" Id. at 433 (italics omitted). Even so, "the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff 'reasonably believes the employment practice to be unlawful.'" Id. (italics omitted). "This 'reasonable belief' standard acknowledges that there is 'some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII.'" Id. (quoting E.E.O.C. v. Rite Way Serv., Inc., 819 F. 3d 235, 241 (5th Cir. 2016)).

The Fifth Circuit has held that "[a]t the pleading stage, the causation standard is less stringent that the strict 'but-for' causation standard." Id. at 434 (citing Newbury v. City of Windcrest, 991 F. 3d 672, 678 (5th Cir. 2021)). A plaintiff is not required to demonstrate "that the protected activity was the sole cause for retaliation, only that the two…'are not completely unrelated.'" Id. This can be proven by direct or circumstantial evidence. See id. Additionally, "[a]t the pleading stage, a plaintiff can establish causation by showing a temporal proximity between the protected activity and the adverse employment action alone." Id. The proximity must be "'very close,' and the Supreme Court has held that a period of three months is insufficient to show causation." Id. (citing Clark v. Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001)). From Fifth Circuit jurisprudence, "two and one-half months is the longest period that can, without more, show causation for retaliation purposes." Id. (citing Brown v. Wal-Mart Stores E., L.P., 969 F. 3d 571, 578 (5th Cir. 2020) (nothing that the court has held periods of six-and-a-half weeks, two months, and two-and-a-half months to be close enough to show a causal connection)).

### (d) Title VII Hostile Work Environment.

"The hostile work environment inquiry asks whether 'an employer has created "a working environment heavily charged with…discrimination."'" Anderson, 2023 WL 5918090, at *2 (quoting Raj v. La. State Univ., 714 F. 3d 322, 331 (5th Cir. 2013) (quoting Rogers v. EEOC, 454 F. 2d 234, 238 (5th Cir. 1971))). "To survive a motion to dismiss, a plaintiff must plead facts that link alleged harassment with his or her protected characteristic." Id. The Fifth Circuit has held that a plaintiff must show five elements to establish the prima facie case for a Title VII hostile work environment claim:

> "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."

Dailey v. Shintech, Inc., 629 Fed. Appx. 638, 643 (5th Cir. 2015) (quoting Ramsey v. Henderson, 286 F. 3d 264, 268 (5th Cir. 2002)).

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Newell, 637 F. Supp. 3d at 430 (quoting Ramsey, 286 F. 3d at 268). Furthermore, "[h]arassment is sufficiently 'severe or pervasive enough' to create a hostile work environment when it is 'objectively hostile or abusive'—meaning 'an environment that a reasonable person would find hostile or abusive'—and is subjectively perceived by the victim as abusive." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367 (1993)). The Supreme Court has found that when judging "'the objective severity of harassment,'" courts should look to "'the perspective of a reasonable person in the plaintiff's position.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998 (1998)). A court should "consider 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23, 114 S. Ct. 367). These factors are not required, however. See id.

**III. First Motion to Dismiss (Record Document 12).**

Voodoo's first Motion to Dismiss was filed in response to Plaintiffs' Original Complaint on August 27, 2024. <u>See</u> Record Document 12. Plaintiffs filed their Amended Complaint on October 30, 2024. <u>See</u> Record Document 22. Voodoo then filed its second Motion to Dismiss on November 27, 2024 in response to Plaintiffs' Amended Complaint. <u>See</u> Record Document 25.

The Fifth Circuit has held that "[a]n 'amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to an adopts or incorporates by reference the earlier pleading.'" <u>Greene v. DeMoss</u>, No. 20-00578, 2020 WL 7755690, at *1 (W.D. La. Dec. 11, 2020) (quoting <u>King v. Dogan</u>, 31 F. 3d 344, 346 (5th Cir. 1994) (citing <u>Boelens v. Redman Homes, Inc.</u>, 759 F. 2d 504, 508 (5th Cir. 1985))). When an amended complaint is filed after a motion to dismiss, "courts may elect to either consider the pending motions in light of the amended complaint or deny such motions as moot." <u>Fogleman-Laxey v. Guillory</u>, No. 21-03038, 2022 WL 764248, at *1 (W.D. La. Mar. 10, 2022). The majority of federal appellate and district courts find "that the filing of an amended complaint moots any motion filed in response to the original complaint." <u>Id.</u> (citing <u>Ultravision Techs., LLC v. Eaton Corp., PLC</u>, No. 19-00290, 2019 WL 11250161, at *1 (E.D. Tex. Nov. 8, 2019) (collecting cases)). <u>See</u> <u>McCoy v. Bogan</u>, No. 20-388, 2021 WL 3730057, at *2 (M.D. La. July 1, 2021) (quoting <u>La. v. Bank of Am. Corp.</u>, No. 19-638, 2020 WL 3966875, at *5 (M.D. La. July 13, 2020)).

Here, Plaintiffs' Amended Complaint provides additional factual allegations surrounding their claims but makes no mention of their Original Complaint. Therefore, like the court held in <u>Greene</u>, "the sole, operative complaint" before this Court is Plaintiffs'

10

Amended Complaint. 2020 WL 7755690, at *1. The Court finds it would be more efficient to deny Voodoo's first Motion to Dismiss as moot since it filed a second Motion to Dismiss that addresses Plaintiffs' Amended Complaint. See Xtria, LLC v. Int'l Ins. Alliance Inc., No. 09-2228, 2010 WL 1644895, at *2 (N.D. Tex. Apr. 22, 2010) ("Because [the plaintiff] has been granted leave to amend, [the defendant's] motions to dismiss and for judgment on the pleadings are denied without prejudice as moot."); see also Probado Techs. Corp. v. Smartnet, Inc., No. 09-349, 2010 WL 918573, at *1 (S.D. Tex. Mar. 12, 2010) ("If an amended complaint does not incorporate the earlier pleading, the court may deny as moot a motion to dismiss that was filed before the operative complaint."). Therefore, Voodoo's first Motion to Dismiss (Record Document 12) is **DENIED AS MOOT**.

## IV. Second Motion to Dismiss (Record Document 25).

Voodoo adopts and incorporates its arguments made in its first Motion to Dismiss and reply brief. See Record Document 25-1 at 2. Voodoo submits Plaintiffs have not supported their claims of racial discrimination, age discrimination, retaliation, or a hostile work environment. See id. With respect to their racial discrimination claim, Voodoo argues they have failed to show or identify others who were similarly situated. See id. at 3. For their age discrimination claim, Voodoo asserts that Plaintiffs' allegations are a mere recitation of the ADEA elements. See id.

As to their retaliation claim, Voodoo contends Plaintiffs made a singular complaint to Simpson that was immediately fixed. See id. at 4. Voodoo submits there are no allegations in the Amended Complaint that attribute Plaintiffs' termination to Dozier's report to Simpson. See id. Voodoo asserts that Plaintiffs believe they were fired because of reporting an unresolved oil spill; however, this type of report is not protected conduct

under Title VII. <u>See id.</u> Additionally, Voodoo argues Plaintiffs cannot establish causation. <u>See id.</u> at 4–5.

With respect to their hostile work environment claim, Voodoo submits that Plaintiffs have not met the high burden imposed by this type of claim. <u>See id.</u> at 5. Voodoo contends there are not sufficient facts showing a pervasive, abusive work environment. <u>See id.</u> In sum, Voodoo argues Plaintiffs' Amended Complaint offers no additional facts sufficient to state a claim for recovery. <u>See id.</u> at 6. Thus, Voodoo asks the Court to grant its second Motion to Dismiss. <u>See id.</u> Plaintiffs did not oppose the second Motion.

All four of Plaintiffs' claims listed in their Amended Complaint must be fully exhausted before they can file suit in federal court. <u>See</u> <u>Ross v. Loyola Univ. New Orleans</u>, No. 22-1731, 2022 WL 4120252, at *4 (E.D. La. Sept. 9, 2022) (claims under Title VII); <u>Sollazzo v. Allied Universal</u>, No. 22-237, 2023 WL 5969220, at *2–3 (W.D. La. Sept. 12, 2023) (employment discrimination and retaliation claims); <u>Deal v. Loves Travel Stop, Inc.</u>, No. 20-01452, 2022 WL 829082, at *3–4 (W.D. La. Mar. 18, 2022) (ADEA age discrimination claims); <u>LaRocca v. Alvin Indep. Sch. Dist.</u>, No. 21-40043, 2022 WL 1001442, at *1 (5th Cir. Apr. 4, 2022) (hostile work environment and retaliation claims). "In a deferral state, such as Louisiana, a plaintiff has 300 days from the discriminatory act to file the charge with the EEOC." <u>Ross</u>, 2022 WL 4120252, at *4. If a plaintiff fails to file a charge within this time period, they are barred from proceeding with a civil action. <u>See id.</u> "A sufficient charge should contain '[t]he full name and contact information of the person against whom the charge is made' and '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" <u>Sollazzo</u>, 2023 WL 5969220, at *2 (quoting 29 C.F.R. § 1601.12(a)).

12

If a plaintiff fails to fully exhaust an administrative remedy, the defendant must assert that failure as an affirmative defense. See id. at *3. This defense "can be asserted at the motion to dismiss stage 'only if the defense is evident on the fact of the complaint.'" Id. (quoting Luebano v. Office Depot, L.L.C., No. 22-50767, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023) (citing EPCO Carbon Dioxide Prods., Inc., v. JP Morgan Chase Bank, 467 F. 3d 466, 470 (5th Cir. 2006))). Furthermore, a plaintiff must allege in their complaint that they have exhausted all administrative remedies with the EEOC. See id. In Sollazzo, the plaintiff "did not allege that he exhausted his administrative remedies with the EEOC in his complaint, amended complaint, opposition to [d]efendant's motion to dismiss, or any other filing in the record. Id. Thus, the district court dismissed his claims. See id.

In the instant case, the only mention of filing a charge with the EEOC is contained within Plaintiffs' opposition to Voodoo's first Motion to Dismiss. See Record Document 15 at 16. Plaintiffs argue Dozier filed his EEOC charge on May 15, 2023. See id. They assert that Dozier received his Right to Sue from the EEOC on November 30, 2023. See id. at 16–17. Plaintiffs submit that Smith filed his EEOC charge on May 15, 2023 and later received his Right to Sue from the EEOC. See id. at 17. There is no mention of Plaintiffs' EEOC charges or Notices to Sue in their Original Complaint or Amended Complaint. Even though Voodoo brought up the issue of exhaustion and Plaintiffs addressed it in their opposition, they failed to sufficiently plead exhaustion in their Amended Complaint.

The court in Sollazzo suggests that the ultimate result may have been different if the plaintiff had mentioned his EEOC charge in his opposition to the defendant's motion to dismiss. Here, while Plaintiffs did not plead exhaustion in either their Original Complaint or Amended Complaint, they did mention it in their opposition to Voodoo's first Motion to

Dismiss. Furthermore, in <u>Deal</u>, the district court found that the plaintiff had not properly pled that he fully exhausted all administrative remedies; however, the court discussed the merits of his claims and still found dismissal proper. 2022 WL 829082, at *4. The Court adopts this approach and will discuss the merits of all four of Plaintiffs' claims. Since exhaustion has not been sufficiently pled, the Court will grant Voodoo's second Motion to Dismiss. However, if a claim survives dismissal on the merits, it will be dismissed without prejudice, and the Court will grant Plaintiffs leave to file a second amended complaint to properly plead exhaustion as to those claims. If a claim does not survive dismissal on the merits, it will be dismissed with prejudice and cannot be pled in a second amended complaint.

<u>(a) Title VII Racial Discrimination Claim.</u>

In their Amended Complaint, Plaintiffs claim that Voodoo subjected them to racial discrimination at the hands of Moon, their district manager. <u>See</u> Record Document 22 at ¶ 73. Plaintiffs allege they are members of a protected group as black males and were qualified for their positions. <u>See id.</u> at ¶¶ 74–75. Furthermore, they state they were discharged and/or suffered adverse employment action by Moon. <u>See id.</u> at ¶ 76. Plaintiffs claim they were routinely treated less favorably than other similarly situated Voodoo employees who were white. <u>See id.</u> at ¶ 77. They allege Team B was required to work long hours in unsafe environments and commute long hours without proper safety equipment while white workers were able to decline jobs, work minimal hours, have adequate housing accommodations, and did not have to commute long distances for jobs. <u>See id.</u> at ¶ 78–79.

At this stage, the Court finds that Plaintiffs' factual allegations support a plausible racial discrimination claim under Title VII. First, Plaintiffs are members of a protected group since they are black men. Second, they allege there were qualified for their positions at Voodoo, which the Court accepts as true at the pleading stage. Third, Plaintiffs' employment at Voodoo was terminated, which is considered an adverse employment action. Fourth, they allege specific instances where Team B was treated differently than Team A. From the Amended Complaint, it appears Team A employees are similarly situated to Team B employees; however, Team A is made up of white employees, and Team B is made up of black employees.

Plaintiffs point to specific instances where they were forced to take certain jobs, their work hours were increased, their housing accommodations were inadequate, and they had to commute long distances for jobs. Plaintiffs provide dates and other factual details that are sufficient at the pleading stage. Therefore, if properly exhausted, Plaintiffs' Title VII race discrimination claim would survive dismissal. With respect to their racial discrimination claim, Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED** because Plaintiffs have failed to adequately plead exhaustion. However, Plaintiffs' racial discrimination claim is **DISMISSED WITHOUT PREJUDICE**, which gives them an opportunity to file a second amended complaint properly pleading exhaustion.

(b) ADEA Age Discrimination Claim.

In their Amended Complaint, Plaintiffs alleged that Voodoo engaged in age-based discrimination. See Record Document 22 at ¶ 81. Dozier was 53 years old when he was employed at Voodoo, and Smith was 46 years old when he was employed at Voodoo. See id. at ¶¶ 82–83. They claim that while they were employed at Voodoo, they were in

a protected class because they were black males over 40 years old. See id. at ¶ 86. Plaintiffs provide they were qualified for their positions and were discharged in November 2022. See id. at ¶¶ 84–85. They allege they were replaced with younger employees identified as "employee #1" and "unknown employee #2." See id. at ¶ 87.

The Court finds that Plaintiffs have not sufficiently pled all elements of the prima facie case for age discrimination under the ADEA. While they provide sufficient factual allegations as to the first three elements, the fourth element is where Plaintiffs fail. They fail to identify with some specificity the two younger employees who replaced Dozier and Smith after their termination. Merely stating they were replaced with younger employees, who cannot be identified with any degree of specificity, is not sufficient at the pleading stage because it is a mere recitation of the element. See Jenkins v. City of Dall., Tex., 717 F. Supp. 3d 528, 534–35 (N.D. Tex. 2024). There are no specific factual allegations supporting their age discrimination claim. Even if properly exhausted, Plaintiffs' age discrimination claim under the ADEA fails on the merits. Therefore, with respect to their age discrimination claim, Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

(c) Title VI Retaliation Claim.

In their Amended Complaint, Plaintiffs claim they were retaliated against because of their age and race. See Record Document 22 at ¶ 89. They allege that Dozier engaged in a protected activity by reporting the preferential treatment of Team A to Simpson, and he was terminated because of this report. See id. at ¶ 91–92. Plaintiffs allege Smith was terminated because of Dozier's reporting and for his association with Dozier. See id. at ¶ 93. Less than two weeks after the report, Dozier was terminated. See id. at ¶ 95. One

week after Dozier was terminated, Smith was terminated. <u>See id.</u> at ¶ 96. Plaintiffs claim close temporal proximity exists between Dozier's report about the discriminatory treatment and an unresolved oil spill and their termination. <u>See id.</u> at ¶ 94.

The Court finds that Dozier has a plausible retaliation claim, but Smith does not. "The Fifth Circuit has found that an internal complaint is a protected activity under Title VII." <u>U.S. Equal Emp't Opportunity Comm'n v. Counsel for Advancement of Soc. Servs.</u>, No. 23-00808, 2024 WL 4479882, at *4 (W.D. La. Oct. 2024). <u>See</u> <u>Wright v. Union Pac. R.R. Co.</u>, 990 F. 3d 428, 434 (5th Cir. 2021). Thus, Dozier's complaint to Simpson about Moon's disparate treatment of Team B qualifies as a protected activity under Title VII. However, Dozier's report regarding the unresolved oil spill is not a protected activity because it does not fit the definition provided by Fifth Circuit case law. <u>See</u> <u>Newell</u>, 637 F. Supp. 3d 432–33. Furthermore, Dozier suffered an adverse employment action because he was terminated from his position at Voodoo.

The final element of the prima facie case is the causal connection between the protected activity and the adverse action. <u>Anderson</u>, 2023 WL 5918090, at *3. As stated previously, this element is less stringent at the pleading stage. <u>Newell</u>, 637 F. Supp. 3d at 434. Plaintiffs are only required to show that Dozier's internal complaint and his subsequent termination are somewhat related. <u>Id.</u> Plaintiffs allege that on or about November 2, 2022, Dozier reported the differential treatment to Simpson. <u>See</u> Record Document 22 at ¶ 55. Subsequently, Simpson called Moon to only address the issue surrounding the hotel accommodations. <u>See id.</u> at ¶ 57. On November 14, 2022, Moon gave Dozier termination papers. <u>See id.</u> at ¶ 61. Less than two weeks after Dozier's internal complaint, Moon terminated him. Given the short amount of time between the

complaint and termination, the Court finds there is some causal connection which is sufficient at the pleading stage.

If properly exhausted, Plaintiffs' Title VII retaliation claim for Dozier can survive dismissal on the merits. Therefore, Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED** because Plaintiffs have failed to adequately plead exhaustion. However, the retaliation claim, as to Dozier, is **DISMISSED WITHOUT PREJUDICE**, giving him an opportunity to file a second amended complaint properly pleading exhaustion.

On the contrary, the retaliation claim with respect to Smith fails on the merits. Plaintiffs allege Smith was terminated because of Dozier's reporting, his association with Dozier, and his age and race. See Record Document 22 at ¶ 93. Another employee's internal complaint or an association with another employee who was also terminated is not a protected activity under Title VII. Additionally, merely stating that Smith was terminated due to his age and race is not enough to overcome dismissal. Plaintiffs fail to assert sufficient factual allegations supporting a plausible retaliation claim for Smith; instead, their allegations are conclusory and speculative with little factual basis. Even if properly exhausted, the Title VII retaliation claim, as it relates to Smith, fails on the merits. Therefore, Voodoo's second Motion to Dismission (Record Document 25) is **GRANTED**, and the retaliation claim, as to Smith, is **DISMISSED WITH PREJUDICE**.

(d) Hostile Work Environment Claim.

In their Amended Complaint, Plaintiffs allege that Voodoo subjected them to racial harassment which created a hostile work environment. See Record Document 22 at ¶ 98.

18

Plaintiffs state they are members of a protected class as black males. See id. at ¶ 99. They claim they were subjected to unwelcome harassment from Moon and Team A by way of their acts and/or failure to act, the differential treatment between Team A and Team B, and the visible showing of Franklin's KKK tattoo. See id. at ¶ 100.

Plaintiffs allege the harassment they endured was because of their race. See id. at ¶ 101. Additionally, they claim the harassment was pervasive in nature, affected their employment, and made for an uncomfortable work environment. See id. at ¶ 102. Plaintiffs argue that Voodoo knew or should have known that they were experiencing racially based harassment because Dozier complained about the discriminatory treatment several times, and the tattoo was visible to all. See id. at ¶ 103.

"'The inquiry for the Court at this stage is whether the [amended] complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of each element of the [plaintiffs'] claims.'" Woods v. La. Special Sch. Dist., No. 23-3083, 2023 WL 8370382, at *6 (E.D. La. Dec. 4, 2023) (quoting Blanchard v. Tulane Univ., 636 F. Supp. 3d 642, 656 (E.D. La. 2022) (quotation omitted)). While Plaintiffs are members of a protected group, their Amended Complaint does not contain sufficient allegations to support a plausible hostile work environment claim. Regarding the allegedly visible KKK tattoo, the Court finds the factual allegations are insufficient to show that Voodoo either knew or should have known of the tattoo. There is nothing to support the visibility of the tattoo other than Plaintiffs' conclusory statement that it was visible. Furthermore, Plaintiffs' factual allegations about the tattoo do not give rise to conduct that was so sufficiently severe or pervasive that it altered the terms, conditions, or privileges of their employment.

A distinguishable case supports the Court's finding. In <u>Norman v. ExxonMobil Corp.</u>, the plaintiff alleged that he was subject to a hostile work environment because "he was 'subjected to a racial depiction of himself as a caricature of a stereotypical African American Male,' which 'a white employee' taped to [the plaintiff's] chair, made a video recording of, and then 'widely disseminated' to 'other coworkers of the plaintiff.'" No. 23-00330, 2024 WL 477521, at *1 (M.D. La. Feb. 7, 2024). The district court found "that this compounding of the harassment through widespread publication advance[d] [the plaintiff's] claim beyond the pleading stage." <u>Id.</u> at *3. The court concluded the harassment was so severe and pervasive that it affected a term, condition, or privilege of the plaintiff's employment. <u>Id.</u>

Unlike <u>Norman</u>, the allegedly visible KKK tattoo in the instant case does not rise to the level of severe and pervasive. Moreover, there is nothing to show that this tattoo was so visible that Voodoo knew or should have known of it. Thus, the tattoo is not a sufficient basis for a hostile work environment claim under Title VII.

Plaintiffs also base their claim on the preferential treatment given to Team A at the expense of Team B. While these allegations are sufficient to plead a racial discrimination claim under Title VII, they are not sufficient to plead a hostile work environment claim under Title VII. Even accepting Plaintiffs' factual allegations as true, the preferential treatment given to Team A is not severe enough to support a plausible hostile work environment claim. In their Amended Complaint, Plaintiffs state the harassment was because of their race, was pervasive in nature, affected their employment, and made for an uncomfortable work environment. <u>See</u> Record Document 22 at ¶ 102. These are legal conclusions that are speculative and do not overcome dismissal. Plaintiffs merely recite

20

the elements for a hostile work environment claim under Title VII which is insufficient. Even if properly exhausted, Plaintiffs' hostile work environment claim does not survive on the merits. Therefore, with respect to their Title VII hostile work environment claim, Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED**, and this claim is **DISMISSED WITH PREJUDICE**.

**CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Voodoo's first Motion to Dismiss (Record Document 12) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Voodoo's second Motion to Dismiss (Record Document 25) is **GRANTED** because Plaintiffs' have failed to properly plead exhaustion in their Amended Complaint. However, for certain claims, the Court grants leave for Plaintiffs to file a second amended complaint to properly plead exhaustion. These claims are specified below.

The following claims are **DISMISSED WITHOUT PREJUDICE**: Plaintiffs' Title VII racial discrimination claim and Plaintiffs' Title VII retaliation claim as to Dozier. With respect to these claims only, Plaintiffs are **GRANTED LEAVE** to file a second amended complaint to plead exhaustion.

The following claims are **DISMISSED WITH PREJUDICE** and may not be pled in a second amended complaint: Plaintiffs' ADEA age discrimination claim; Plaintiffs' Title VII retaliation claim as to Smith; and Plaintiffs' Title VII hostile work environment claim.

An Order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 25th day of February, 2025.

UNITED STATES DISTRICT COURT JUDGE